UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| FRISCO HONNEVK, and BOUALAI VONGPHACHANH,<br><br>Plaintiffs,<br><br>v.<br><br>FARMERS NEW WORLD LIVE INSURANCE COMPANY,<br><br>Defendant. | No.  1:11-cv-1531 AWI DLB<br><br>MEMORANDUM OPINION AND ORDER ON DEFENDANT'S MOTION FOR SUMMARY JUDGMENT<br><br>Doc. # 22 |

   This is an action in diversity for breach of insurance contract by plaintiffs Frisco Honnevk and Boualai Vongphachanh ("Plaintiffs"), who are beneficiaries of a life insurance contract written by defendant Farmers New World Insurance Company ("Defendant") insuring the life of Somporn Phasavo ("Phasavao").  Plaintiff's complaint alleges claims for breach of contract and bad faith arising from the failure of Defendants to pay insurance proceeds upon Plaintiffs' submission of claims following the alleged death of Phasavo.  Currently before the court is Defendant's motion for summary judgment or, in the alternative, summary adjudication.  Diversity Jurisdiction exists pursuant to 28 U.S.C. § 1332. Venue is proper in this court.

1

## PROCEDURAL HISTORY

This action was removed from Fresno County Superior Court on September 9, 2011, on the basis of diversity jurisdiction. Defendant's notice of motion for summary judgment was filed on February11, 2013, and Defendant's memorandum of points and authority was filed on February 25, 2013. Plaintiffs' opposition was filed on February 19, 2013, and Defendant's reply was filed on February 25, 2013. The matter was taken under submission as of March 11, 2013.

## UNDISPUTED MATERIAL FACTS

The following is a summary of undisputed material facts proffered by Defendants. These facts are not disputed except as noted.

Defendant issued a "policy of Nonparticipating Modified Premium Term Live Insurance (hereinafter, "Policy"), insuring the life of Decedent on or about June 9, 2008. The policy provided a death benefit of $150,000. The beneficiaries of the Policy were Decedent's cousin, Honnevk, and Decedent's spouse, Vongphachanh. The Policy provides that "upon receipt of due proof of the insured's death," the proceeds of the Policy would be paid to the beneficiaries. On or about October 7, 2008, Honnevk sighed a "Claimant's Statement for Insurance Proceeds." ("Honnevk's Statement"). Honnevk's Statement stated that Decedent had died on August 28, 2008, as a result of a car accident. Honnevk later completed a document called a "Foreign Death Questionaire ("FDQ") on or about January 2, 2009. Honnevk's FDQ stated Decedent Died on September 10, 2008, and named "Mr. Bounsuy, Lao Army" as a person that was present at the "final services."

Co-Plaintiff Vongpachanh completed a FDQ on or about January 26, 2009, in which she stated Decedent died on September 10, 2008, and that his remains were identified by Paul Sayavong. Vongpachanh completed a "Claimant's Statement for Insurance Proceeds" on February 11, 2009, in which she reported that the date of death was August 28, 2008, as a result of a car accident.

On or about October 20, 2008, Defendant acknowledged receipt of a death certificate and a letter from the U.S. Embassy in Laos. Both the Death Certificate and the letter from the embassy were faxed to Defendant by Plaintiffs' agent. The death certificate was written in

Laotian and signed by a Mr. Bounsery Kitniphon, ("Cmdr. Kitniphon") Commanding Officer of the Phoukhoun Army Unit that had found Decedent's remains. The Death Certificate was accompanied by an English translation. The letter from the U.S. Embassy that was faxed along with the Death Certificate did not mention the Death Certificate but advised that an original Travel Document and unexpired Alien Resident Card were being returned to the USCIS Office in Bangkok, Thailand. The author of the letter – U.S. Consul Michael D. Sweeny – stated that "it appears that [Phasavo] died in Laos in September 2008," without any documentation or other information supporting that speculation.

Defendant retained the serves of a Claims Investigator to investigate the details of Plaintiffs' claims under the Policy. Upon completion of the investigation, the Investigator sent Defendant a report which contained, among other things, an interview with Cmdr. Kitniphon regarding his actual knowledge of facts contained in the statements made in the Death Certificate. Cmdr. Kitniphon told the investigator he did not know exactly what happened to Phavaso, did not know who found the remains or where the remains were cremated. Cmdr. Kitniphon stated he wrote the Death Certificate at the behest of Paul Sayavong, the person who is listed as having identified the remains. It also happens that Paul Sayavong is a relative of Cmdr. Kitniphon's wife.

Plaintiffs' claims for benefits from the Policy were denied by Defendant on April 20, 2010. Both Plaintiffs acknowledge timely receipt of Defendants' notice of denial and acknowledge that they understood the nature of the notification.

Plaintiffs did not submit a separate statement of disputed material facts as such. Rather, Plaintiff's noted the parties were unable to agree on a single set of undisputed material facts and, as a consequence, Plaintiff's submitted a version of Defendants' list of undisputed material facts to which Plaintiffs have added or amended certain paragraphs or statements. The major facts alleged by Plaintiffs opposition to Defendant's motion for summary judgment are set forth as follows:

> Plaintiff through subpoena of the New York Life Insurance Company; who also has a life insurance policy in effect on Phasavo, [received documents relating

3

> to Phasavo's death]. [The] Documents received are statements of the head of the village and four soldiers with photographs attached, statements claimed to have found a dead body on September 2008. Found on [the] deceased['s] possession, a US Passport, California Drivers License and other personal effect[s] of the deceased, Somporn Phasavo. The soldiers, after a few days, claimed to have cremated the body for lack of cold storage.
>
> Plaintiffs submit as fact that these witnesses can and will identify the dead body they discovered in September of 2008 as Somporn Phasavo. Arrangements are being made to bring the Village Chief and Two Soldiers to the United States to testify at trial.

Doc. # 21-5 at ¶¶ 42-43 (hereinafter, "Paragraph 42" or "Paragraph 43").

## LEGAL STANDARD

Summary judgment is appropriate when it is demonstrated that there exists no genuine issue as to any material fact, and that the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c); Adickes v. S.H. Kress & Co., 398 U.S. 144, 157 (1970); Poller v. Columbia Broadcast System, 368 U.S. 464, 467 (1962); Jung v. FMC Corp., 755 F.2d 708, 710 (9th Cir. 1985); Loehr v. Ventura County Community College Dist., 743 F.2d 1310, 1313 (9th Cir. 1984).

> Under summary judgment practice, the moving party always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any," which it believes demonstrate the absence of a genuine issue of material fact.

Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986). Although the party moving for summary judgment always has the initial responsibility of informing the court of the basis for its motion, the nature of the responsibility varies "depending on whether the legal issues are ones on which the movant or the non-movant would bear the burden of proof at trial." Cecala v. Newman, 532 F.Supp.2d 1118, 1132-1133 (D. Ariz. 2007). A party that does not have the ultimate burden of persuasion at trial – usually but not always the defendant – "has both the initial burden of production and the ultimate burden of persuasion on the motion for summary judgment." Nissan Fire & Marine Ins. Co., Ltd. v. Fritz Companies, Inc., 210 F.3d 1099, 1102 (9th Cir. 2000). "In order to carry its burden of production, the moving party must either produce

1 evidence negating an essential element of the nonmoving party's claim or defense or show that
2 the nonmoving party does not have enough evidence of an essential element to carry its ultimate
3 burden of persuasion at trial." Id.

4     If the moving party meets its initial responsibility, the burden then shifts to the opposing
5 party to establish that a genuine issue as to any material fact actually does exist. Matsushita Elec.
6 Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986); First Nat'l Bank of Arizona v. Cities
7 Serv. Co., 391 U.S. 253, 288-89 (1968); Ruffin v. County of Los Angeles, 607 F.2d 1276, 1280
8 (9th Cir. 1979). In attempting to establish the existence of this factual dispute, the opposing party
9 may not rely upon the mere allegations or denials of its pleadings, but is required to tender
10 evidence of specific facts in the form of affidavits, and/or admissible discovery material, in
11 support of its contention that the dispute exists. Rule 56(e); Matsushita, 475 U.S. at 586 n.11;
12 First Nat'l Bank, 391 U.S. at 289; Strong v. France, 474 F.2d 747, 749 (9th Cir. 1973). The
13 opposing party must demonstrate that the fact in contention is material, i.e., a fact that might
14 affect the outcome of the suit under the governing law, Anderson v. Liberty Lobby, Inc., 477 U.S.
15 242, 248 (1986); T.W. Elec. Serv., Inc. v. Pacific Elec. Contractors Ass'n, 809 F.2d 626, 630 (9th
16 Cir. 1987), and that the dispute is genuine, i.e., the evidence is such that a reasonable jury could
17 return a verdict for the nonmoving party, Anderson, 477 U.S. 248-49; Wool v. Tandem
18 Computers, Inc., 818 F.2d 1433, 1436 (9th Cir. 1987).

19     In the endeavor to establish the existence of a factual dispute, the opposing party need not
20 establish a material issue of fact conclusively in its favor. It is sufficient that "the claimed factual
21 dispute be shown to require a jury or judge to resolve the parties' differing versions of the truth at
22 trial." First Nat'l Bank, 391 U.S. at 290; T.W. Elec. Serv., 809 F.2d at 631. Thus, the "purpose of
23 summary judgment is to 'pierce the pleadings and to assess the proof in order to see whether there
24 is a genuine need for trial.'" Matsushita, 475 U.S. at 587 (quoting Fed. R. Civ. P. 56(e) advisory
25 committee's note on 1963 amendments); International Union of Bricklayers v. Martin Jaska, Inc.,
26 752 F.2d 1401, 1405 (9th Cir. 1985).

27     In resolving the summary judgment motion, the court examines the pleadings,
28 depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any.

Rule 56(c); Poller, 368 U.S. at 468; SEC v. Seaboard Corp., 677 F.2d 1301, 1305-06 (9th Cir. 1982). The evidence of the opposing party is to be believed, Anderson, 477 U.S. at 255, and all reasonable inferences that may be drawn from the facts placed before the court must be drawn in favor of the opposing party, Matsushita, 475 U.S. at 587 (citing United States v. Diebold, Inc., 369 U.S. 654, 655 (1962)(per curiam); Abramson v. University of Hawaii, 594 F.2d 202, 208 (9th Cir. 1979). Nevertheless, inferences are not drawn out of the air, and it is the opposing party's obligation to produce a factual predicate from which the inference may be drawn. Richards v. Nielsen Freight Lines, 602 F. Supp. 1224, 1244-45 (E.D. Cal. 1985), aff'd, 810 F.2d 898, 902 (9th Cir. 1987).

## ANALYSIS

### I. Breach of Contract Claim

Defendant's basic contention regarding Plaintiff's breach of contract claim is that Plaintiffs are unable as a matter of law to provide *admissible* evidence to show due proof of Phasavo's death. Plaintiff's place emphasis on the word "admissible" because, as they observe, there are substantial problems with the authentication and hearsay nature of evidence that was submitted by Plaintiffs. There is no question that the contract insuring the life of Phasavo placed the burden on Plaintiffs to show by a preponderance of the evidence the fact of Phasavo's death. See New York Life Ins. Co. v. Gamer, 303 U.S. 161, 171 (1938) (proof by preponderance of evidence due where life insurance contract places burden of proof on beneficiaries of policy). Plaintiff's complaint alleges two claims for relief; the first for breach of contract based on the failure of Defendant to pay proceeds from the Policy and the second for bad faith. Both claims are predicated on contention that Plaintiffs submitted "due proof" of Phasavo's death in accordance with the terms of the Policy. The threshold issue that arises immediately from Defendant's motion for summary judgment is what evidence constitutes "due proof of death"?

What constitutes sufficient substantive evidence to establish the fact of death of an insured is a matter of state law. See Tu v. Mut. Life Ins. Co. of New York, 136 F.3d 77, 79-80 (1 Cir. 1998 (interpreting Massachusetts state law to determine the meaning of the term "due proof of death"). Significantly, neither party has provided the court with any California case authority that

6

would apply to resolve the question of what constitutes a sufficient proof of death under the facts presented in this case. The court has been similarly unable to find any relevant California case authority.

Defendants request that this court adopt the analytical framework set forth in Tu. In that case the First Circuit Court of Appeals held:

> Due proof is "the proof furnished to the insurer [that] shows on the whole 'that the claim is of a class within the protection of the policy, so that *if the proofs should be accepted as true the insurer reasonably might pay the claim.*'" Washington v. Metropolitan Life Ins Co., 372 Mass. 714, 363 N.E.2d 683, 685 (1977 (emphasis added) (quoting in part *O'Neil v. Metropolitan Life Ins. Co.*, 300 Mass. 477, 15 N.E.2d 8.9,811 (1938). In short, due proof satisfies a "preliminary requirement" of notice *Krantz [v. John Hancock Mut. Life Ins. Co.]*, 141 N.E.2d. [703, 723 (1957)], but if the insurer denies death, the claimant must prove it by admissible evidence. *Larsen v. Metropolitan Life Ins. Co.*, 289 Mass. 573, 194 N.E. 664, 665 (1935).

136 F.3d at 79-80.

In the context of the instant action, the First Circuit's decision in Tu stands for two important, albeit perfectly ordinary propositions. First, as noted, the decision in Tu illustrates the ordinary rule that in a diversity insurance case state law determines what must be proven to prevail in a claim and federal law determines what evidence is admissible to make that proof. See Tu, 136 F.3d at 81 (relying on Federal Rules of Evidence to determine the admissibility of documents); Estate of Mohamed v. Monumental Life Ins. Co., 138 F.Supp.2d 709, 718 (E.D. Va. 2001) (noting decision in Tu rested on state statute and case law). Second, at the level of a motion for summary judgment, the claimant of a life insurance policy has the burden to produce evidence in accordance with Rule 56 upon which a trier of fact could find that the insured is dead. This is nothing more than application of the legal standard articulated above to the context of a life insurance dispute.

There are two propositions important to this case that are *not* supported by the decision in Tu. First, the decision in Tu does not support the proposition that a showing of any particular type of evidence, such as a death certificate, is necessary to establish a claim in a life insurance case in California. As noted in Estate of Mohamed, the court's decision in Tu focused on the admissibility of a foreign death certificate – one having problems of authentication similar to the

7

purported death certificate in this case – but that was only because the claimant in the Tu case offered no evidence of death other than a foreign death certificate that could not be authenticated. See Estate of Mohamed, 138 F.Supp.2d 718 ("Unlike *Min Tu*, the inadmissibility of the Somali death certificate as a means of proof of the facts stated therein does not end the Court's enquiry into the sufficiency of the proof submitted').

Second, and more important in the context of this case, the decision in Tu cannot be interpreted to modify in any way the standards for summary judgment set forth in Rule 56 of the Federal Rules of Civil Procedure. Under Rule 56(c)(2), a "party may object that the material cited to support or dispute a fact *cannot* be presented in a form that *would* be admissible as evidence." Id. (italics added). This court has always interpreted Rule 56(c)(2) to require that an objection to a proffer of evidence on the ground of inadmissibility must be based on the impossibility of producing the evidence in a form that would be admissible *at trial*. This court has never interpreted Rule 56 to require that the evidence alleged be admissible in the form presented at summary judgment. As a result, objections to evidence based on hearsay or lack of authentication are routinely waived in the absence of a showing that there is no way the evidence could be presented at trial that would overcome those objections. The decision in Tu does not counsel otherwise.

The court accepts for purposes of this analysis that the Death Certificate executed in Cambodia is not admissible as proof of Phasavao's death and cannot be made admissible under the facts of this case. What remains is whether Plaintiff have nonetheless succeeded in establishing a genuine issue of material fact as to Phasavo's death on the strength of the facts alleged in Paragraphs 42 and 43 of Plaintiffs' opposition that were quoted above and whether Plaintiffs can present that evidence in a form that would be admissible at trial. The court will address these sub-issues in turn.

   *A.  Identifying Articles Found on the Decedent's Body Presumptively Establish Its Identity*

As previously noted, neither the court nor either party has found any California authority that embellishes on the requirement that a claimant to the proceeds of a life insurance policy

prove the death of the insured by a preponderance of the evidence. Fortunately, the facts of this case do not require that the court go too far out on a limb to decide what is sufficient in this case. In the absence of any authority to the contrary, the court finds that where a dead body is discovered and documents are recovered from the body that in normal circumstances would be sufficient to establish that individual's identity for official purposes and where no facts are present to suggest that the identifying documents are false or belong to another, the identifying documents establish identity to a degree sufficient to withstand a motion for summary judgment. Plaintiff alleges in Paragraph 42 that the soldiers found a California Driver's license and a Passport "and other personal effects of the deceased" on the body and that the documents indicated the body was Phasavao's. The court finds that if those facts could be established by witness testimony, those facts would be sufficient to establish the identity of the body to a degree sufficient to place the issue before a trier of fact.

### B. Evidence supporting Identity of Decedent is Improper under Rule 56(c)

The information contained in Paragraph 42 is supported by brief excerpts of transcripts of translated conversations between an investigator hired by Plaintiffs and the soldiers and the village chief as noted. The evidentiary material supporting the allegations in Paragraph 42 is set forth in Exhibits "R" through "V" of Defendants Appendix of Exhibits, Document Numbers 22-7 and 22-8. The documents in question constitute Plaintiffs' responses to special interrogatories seeking any late-acquired information concerning the alleged death of Phasavao. The relevant documents consist of translations of interviews between an investigator and four military personnel and a village chief who indicated during their interviews that they had seen a dead body by the side of the road, that the body had been dead an estimated four days and was decomposing, that the body had apparently died as a result of a traumatic accident and that documents of identification had been removed indicating the body was that of Phasavao.

Defendants object to the proffer of evidence contained in Paragraphs 42 and 43 on the grounds of hearsay, lack of authentication and failure to obtain the statements under oath. See Doc. # 26 at 11:5-12:9 (arguing the non-admissibility of the documents). Rule 56(c)(4) requires that evidence of a fact may be in the form of an "affidavit or declaration used to support or

oppose a motion [. . .] [which is] made on personal knowledge, set[ing] out facts that would be admissible in evidence, and show[ing] that the affiant or declarant is competent to testify on the matters stated." The court finds the documents constituting support for the facts alleged in Paragraph 42 fulfill all the requirements of Rule 56 except that the information set forth in the translated transcripts is not in the form of a declaration or declarations. As a result, the court finds that the evidence supporting the allegations set forth in Paragraph 42 is not, strictly speaking, in conformity with the requirements of Rule 56(c).

### C. Rule 56(e) Permits Opportunity to Correct Deficiency

Pursuant to Rule 56(e), "[i]f a party fails to properly support an assertion of fact or fails to properly address another party's assertion of fact as required by Rule 56(c), the court may: (1) give an opportunity to properly support or address the fact." In Paragraph 43, Plaintiffs state their intention to transport at least two of the soldiers and the village chief to the United States for the purpose of testimony at trial. Although Defendants do not address the prospect of testimony by these witnesses, the court has no present reason to believe their testimony would be inadmissible and would effectively cure any problems of hearsay or authentication. Defendants have objected that Plaintiffs' statement that they will produce two of the soldiers and the village chief at trial is mere speculation. The court finds the statement of intent to produce the witness as set forth in Paragraph 43 is not speculative to any greater extent than the intent to produce witnesses in any trial. The identities of the proposed witnesses are known and they have been located by the investigator. Defendants have not alleged any reason why Plaintiff's will necessarily fail in the effort to establish the identity of the body that is alleged to have been that of Phasavo.

The court finds that where, as here, the mere correction in the form of a proffer of evidence is likely to be sufficient to establish an issue of material fact in opposition to a motion for summary judgment, and where there is no apparent reason why that correction cannot be accomplished in a timely manner, permitting a party to correct the deficiency in the proffered evidence is appropriate under Rule 56(e)(1). Further, permitting Plaintiff to resubmit the materials formerly submitted in the form of translated transcripts in the form of declarations or affidavits as required by Rule 56(c) addresses the legitimate concern of Defendants and the court

that the evidence to be proffered supports the substance of the facts alleged.

The decision on Defendant's motion for summary judgment as to Plaintiffs' claim for breach of contract will be continued a reasonable amount of time to permit Plaintiffs to resubmit evidence of Phasavao's death in a form consistent with the requirements of Rule 56(c). Defendant may submit any objection to Plaintiff's proffer of evidence no later than fourteen days from the date of submission of the evidence to the court.  The court will thereafter take the matter under submission and make its final ruling on the matter.

**II.     Bad Faith Claim**

Plaintiff's second claim for relief alleges breach of the implied covenant of good faith based on Defendant's alleged failure to adequately investigate details of Phasavao's death. Defendant's primary ground for summary judgment as to Plaintiff's bad faith claim is that the claim is time-barred.  Plaintiffs contend in their opposition that  Defendants failed to notify Plaintiffs of the running of the statutory limitations period pertaining to bad faith contract claims and contends that Defendants should be equitably estopped from asserting a statute of limitations defense.  Plaintiffs cite 10 California Code of Regulations, sections 2695.4(a) and 2695.7(f) for the proposition that Defendants were required to notify Plaintiffs of any time limits that might apply "to the claim presented by the claimant,"  or to notify Plaintiffs prior to the running of any time period "upon which the insurer may rely to deny a claim." Doc. # 25 at 5.

The court finds Plaintiff's contentions regarding Defendant's duty to notify are misplaced. The cited portions of the California Code of Regulations apply on their face to benefits available under the terms of an insurance contract.  Plaintiff's claim for bad faith lies outside the insurance policy and is based on state common law theories of tort, not on the terms of the contract itself. Plaintiffs' argument fails to establish that Defendants had any duty to notify Plaintiffs of the statutory limitations period for the filing of a claim for bad faith.

In order for the doctrine of equitable estoppel to apply, certain conditions must be present: "[T]he party to be estopped must be apprised of the facts; the other party must be ignorant of the true state of the facts; the party to be estopped must have intended that its conduct be acted upon, or so act that the other party had a right to believe that it was so intended; and the other party

must rely on the conduct to its prejudice." ( Cal. Cigarette Concessions v. City of L.A., 53 Cal.2d 865, 869 (1960); see also Driscoll v. City of Los Angeles, 67 Cal.2d 297, 305 (1967)).  Here, there was no action or representation by Defendants upon which Plaintiffs relied to their detriment.  Although Plaintiff's have little familiarity with the English language or with the workings of the legal system, Plaintiffs have admitted that they received the notices of denial of claim timely and that they understood what the denial letters meant.  Plaintiffs cite nothing that might have impeded efforts to obtain timely assistance in filing a claim for bad faith.  There is no apparent basis for the application of equitable estoppel to prevent Defendants from asserting a limitations defense under the facts of this case.

The court finds Plaintiffs' second claim for relief for common law breach of the implied covenant of good faith and fair dealing is time-barred.

## CONCLUSION AND ORDER

THEREFORE, for the reasons discussed above, it is hereby ORDERED that Defendant's motion for summary judgment as to Plaintiffs' second claim for relief for breach of the implied covenant of good faith and fair dealing is GRANTED.  Plaintiffs' second claim for relief is DISMISSED with prejudice.

Defendant's motion for summary judgment as to Plaintiffs' first claim for relief for breach of contract is hereby CONTINUED to allow Plaintiff to re-submit evidence to support the allegations set forth in Paragraph 42 in accordance with Rule 56(c) of the Federal Rules of Civil Procedure and as discussed above.  Such evidence shall be filed and served not later than twenty-one (21) days from the date of service of this order.  Defendants may file and serve any objection to Plaintiffs' proffer of evidence no less than fourteen (14) days from the date Plaintiffs file and serve their proffer of evidence pursuant to this order.

IT IS SO ORDERED.

Dated:   July 15, 2013                                    
                                                          SENIOR DISTRICT JUDGE