UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| FRISCO HONNEVK, and BOUALAI VONGPHACHANH,<br><br>　　　　Plaintiffs,<br><br>　　v.<br><br>FARMERS NEW WORLD LIFE INSURANCE COMPANY,<br><br>　　　　Defendant. | No. 1:11-cv-1531 AWI DLB<br><br><br>MEMORANDUM OPINION AND ORDER ON DEFENDANT'S MOTION FOR SUMMARY JUDGMENT<br><br>Doc. # 22 |

　　In this action for breach of insurance contract, the court previously issued a Memorandum Opinion and Order on July 15, 2013, (the "July 15 Order") granting Defendant's motion for summary adjudication in favor of Defendant on Plaintiff's claim for breach of covenant of good faith and fair dealing.  Defendant's motion for summary judgment on Plaintiff's claim for breach of contract was continued to allow Plaintiff "to re-submit evidence to support the allegations set forth in Paragraph 42 [of Plaintiffs' complaint] in accordance with Rule 56(c) of the Federal Rules of Civil Procedure."  The evidence referenced consisted of translated, unsworn written communications from persons who had discovered the body alleged to be that of decedent Somporn Phasavao ("Phasavao") whose life was insured by a policy with Defendant Farmers

1  New World Life Insurance Company naming Plaintiffs as beneficiaries.  The referenced evidence
2  also pertained to the statements of Lao army personnel who had removed a wallet from the body
3  which contained identification documents consistent with Plaintiffs' allegations that the body
4  discovered in Laos was indeed that of Phasavao.
5        On August 3, 2013, Plaintiffs filed a document titled "Plaintiff Resubmits Evidence in
6  Accordance with Rule 56(c) by Declarations under Penalty of Perjury of Those Individuals Who
7  Found the Body and Identification as Alleged in Paragraphs 42 & 43."  Doc. # 37 (hereinafter,
8  "Plaintiffs' Resubmission").  Defendant submitted its opposition to Plaintiffs' Resubmission on
9  August 16, 2013.  Also on August 16, 2013, Plaintiffs' attorney, Timothy I. Marks, submitted a
10 declaration (the "Marks Declaration"), apparently in response to Defendant's objections, setting
11 forth additional information regarding the conditions under which the Declarations of the
12 individuals from Laos were obtained.  On August 19, 2013, Defendant submitted an objection to
13 the Marks Declaration.
14       The court incorporates here by reference the factual allegations summarized in its July 15
15 order and the court's legal standard in determining Defendant's current motion for summary
16 judgment.

## DISCUSSION

18       The cornerstone of Defendant's motion for summary judgment, insofar as Plaintiff's claim
19 for breach of contract is concerned, is that Plaintiffs cannot produce *admissible* evidence to
20 satisfy the requirement of "due proof" of Phasavao's death, and so cannot perfect their claim for
21 the proceeds of the policy insuring Phasavao's life.  As the court's July 15 Order noted, the
22 emphasis is on the word "admissible" because it is Defendant's central contention that the
23 admittedly substantial problems with the authentication and hearsay nature of the critical
24 evidence are, in fact, insurmountable and that Plaintiffs will not be able to provide due proof of
25 Phasavao's death by admissible evidence at trial.
26       Of significance, the court's July 15 Order made three conclusions of law that have not
27 been contested by either party.  First, the court concluded that under governing California law,
28 there is no particular type of proof that is required to show "due proof" of death.  Second, the

term "due proof" is a term that has no special implication as far as the level of proof is concerned. Thus, the contractual term "due proof of death" means nothing more than proof by a preponderance of the evidence of death of the insured through admissible evidence. Third, the court's July 15 Order concluded that, absent authority to the contrary, a finder of fact could determine by a preponderance of the evidence that the identity of a dead corpse was that indicated by documents removed from the body so long as those documents would be sufficient to establish the identity of the person in possession of them for usual official purposes. See Doc. # 36 at 8:27-9:12.

It is also worth noting that the court's July 15 Order made it clear that the court's interpretation of Rule 56(c)(2) requires that a party who opposes a proffer of evidence in a Rule 56 motion on the basis of its non-admissibility has the burden to show that the evidence "'*cannot* be presented in a form that *would* not be admissible as evidence.'" Doc. # 36 at 8:8-10 (quoting Rule 56(c)(2) (italics added). The court noted that it routinely waives issues of hearsay and authentication for purposes of determining the existence of an issue of material fact unless the objecting party can show that the issues of hearsay and authentication cannot be overcome. The court also recognized that Rule 56(c)(4) does require that evidence of a fact be in the form of an "'affidavit or declaration used to support or oppose a motion [. . .] [which is] made on personal knowledge, set[ting] out facts that would be admissible in evidence, and show[ing] that the affiant is competent to testify on the matters stated.'" Doc. # 36 at 9:28-10:3 (quoting Rule 56(c)(4).

Defendants rely extensively on Hal Roach Studios, Inc. v. Richard Feiner and Co., Inc., 896 F.2d 1542 (9th Cir, 1990), a commonly cited case that illuminates the Ninth Circuit's approach to the kinds of evidence that are admissible to support a Rule 56 motion. That opinion held, in pertinent part:

> It is well established that unauthenticated documents cannot be considered on a motion for summary judgment. Canada v. Blain's Helicopters, Inc., 831 F.2d 920, 925 (9th Cir.1987). To be considered by the court, "documents must be authenticated by and attached to an affidavit that meets the requirements of [Rule] 56(e) and the affiant must be a person through whom the exhibits could be admitted into evidence." Id.; see also 10A C. Wright, A. Miller, & M. Kane, Federal Practice & Procedure § 2722 at 58–60 (2d ed. 1983). A document which lacks a proper foundation to authenticate it cannot be used to support a motion for summary

judgment. Canada, 831 F.2d at 925; Hamilton v. Keystone Tankship Corp., 539 F.2d 684, 686 (9th Cir.1976); United States v. Dibble, 429 F.2d 598, 601–602 (9th Cir.1970).

Id. at 1550-1551.

However, application of the rule set forth in Hal Roach Studios is tempered by consideration of the nature of the evidence that is being asserted. In Fraser v. Goodale, 342 F.3d 1032 (9th Cir. 2003) the Ninth Circuit clarified that the focus of concern in determining the admissibility of evidence in the context of a Rule 56 motion is not the form of the evidence, it is the admissibility of the evidence at trial. See id. at 1036 ("[a]t the summary judgment stage, we do not focus on the admissibility of the evidence's form. We instead focus on the admissibility of its contents"). In Hal Roach Studios, the evidence in question was a document – an S-1 Registration Statement that was purported to have been filed with the Securities and Exchange Commission – that was evidence of ownership of certain film rights. Hal Roach Studios, 896 F.2d at 1551. However, the evidence being proffered here is not a document, it is the testimony of a witness.

Keeping in mind that the instant motion is for summary judgment and is not a motion for admissibility of evidence per se, the court finds it only needs to address the evidentiary status of one of the four proffered declarations; specifically, the declaration of Kham-Ouane Phan-Nya-Pheng (hereinafter, the "Pheng Dec."). The Pheng Dec. makes reference to a statement made on June 22, 2009. The 2009 statement, according to the Pheng Dec., was made in Laotian "and includes a photograph of myself on page number 5." Doc. # 37 at 4:20-21. Pheng declares that he reviewed the original written statement and declares that it is a true and correct statement and that a copy of that statement "is attached to this declaration." Doc. # 37 at 4:23-24. Probably inadvertently, the original statements of Pheng or the other three declarants are not attached to the current declarations. Somewhat mysteriously, Plaintiffs' attorney states in his declaration that following the court's July 15 Order, Plaintiffs' investigator Paul Sayvong, was dispatched to Laos

taking with him the declarants' "statements in [the] Laotian language which were previously submitted with our original response to this motion." Doc. # 40 at 5-6. The court notes that, as of this time, it has been unable to locate the referenced statements in the Laotian language or the English translations.

Although the copies of the original statement in Laotian and their translations that should have been attached to the submitted declarations, but were not, and that the court should be able to find in the court's Docket Report, but cannot, may eventually be important to the successful litigation of Plaintiffs' claims; their absence is not critical to the disposition of the instant motion for summary judgment.

Of critical importance, the Pheng Dec. states:

> I searched the pockets of the corpse [that had been found on patrol] and found several documents in English, we covered his face and took turns watching the body. There was a total of seven documents in English found in the pockets. These documents appeared to be some form of identification and a $100.00 bill. I sent these to the central commanding office. A copy of those documents are attached to this declaration as Exhibit 2.

Doc. 37 at 5:1-7. A page labeled "Exhibit 2" is attached to the Pheng Dec. and appears to consist of three identification documents including a Social Security Card and a California Drivers License. The Pheng Dec. also states that the declarant is "willing to come before this court to testify under oath what I observed and actions taken regarding this matter." Id. at 12:11-12.

Fundamentally, the Pheng Dec. serves to inform the court of the existence of a witness who, if called to testify, is willing to appear and to testify that he saw the corpse, he removed the identifying documents and that the photographs taken and submitted are photographs of the documents he removed from the corpse. Pursuant to Fraser, the court focuses not on the authentication problems presented by the lack of certification of translation. Rather, the focus is on the information that can be presented *at trial*. Presuming that Pheng testifies at trial, the contents of his declaration or of the statement originally made by him are irrelevant except for

impeachment purposes or for refreshment of recollection.  There would be no problems with interpretation of Laotian writing because the testimony would be oral and interpreted by a court-certified interpreter.

The factual situation here is analogous to that present in Fraser.  In Fraser, the admissibility of a personal diary for the truth of the statements made therein was challenged by a party moving for summary judgment.  The court noted that the contents of the diary were "mere recitations of events within [the plaintiff's] personal knowledge and, depending on the circumstances, could be admitted into evidence at trial in a variety of ways."  Fraser, 342 F.3d at 1037.  Here, as in Fraser, the document that Defendant is trying to exclude on foundational grounds is merely a personal account of things that can be attested to by Pheng at trial.  Alternatively, Plaintiffs could cure the foundational deficits that Defendant contends exist and present the written statements as evidence upon proper authentication.  With regard to the Pheng Dec. itself, Rule 56(c) requires only that "an affidavit or declaration used to support or oppose a motion must be made on personal knowledge, set out facts that would be admissible in evidence, and show that the affiant or declarant is competent to testify on the matters stated."  Id.  There is no requirement that the Pheng Declaration itself be admissible as evidence or that it meet any particular foundational requirement.  The purpose of a declaration such as the Pheng Dec. is merely to provide a basis upon which the court can find that a proffered fact, in this case the fact that the identifying documents to be submitted at trial were removed from the body of a dead person, can be supported at trial by testimonial or other competent evidence.

As noted previously, the motion before the court is a motion for summary judgment, not a motion to exclude evidence.  The court finds that the Pheng Dec. has been submitted in proper form for purposes of a motion under Rule 56(c) and that it sets forth facts that may be admissible at trial.  The court also finds that the facts set forth in the Pheng Dec. are sufficient to satisfy Plaintiffs' burden under summary judgment practice to show that a genuine issue of material fact exists, Matushia Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986); and that the evidence is such that might affect the outcome of the suit under governing law.  Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986).  For this reason, Defendant's motion for summary

judgment as to Plaintiffs' claim for breach of contract will be denied.

THEREFORE, for the reasons discussed above, it is hereby ORDERED that Defendant's motion for summary judgment as to Plaintiffs' claim for breach of insurance contract is DENIED.

IT IS SO ORDERED.

Dated:   December 20, 2013

SENIOR DISTRICT JUDGE